# Exhibit A

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 2 of 61

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

JANE DOE 3,

             Plaintiff,

    v.

DARREN K. INDYKE and RICHARD D.
KAHN, in their capacities as co-executors of
the ESTATE OF JEFFREY EDWARD
EPSTEIN,

             Defendants.

---

Index No.:

**SUMMONS**

Plaintiff designates New York
County as the place of trial

Venue is in this County pursuant
to CPLR § 503(a)

To the Above Named Defendants:

    **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorneys, at the address stated below, a notice of appearance and answer to the complaint, within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service if this Summons is not personally delivered to you within the State of New York. This Court has personal jurisdiction over this proceeding pursuant to CPLR § 302(a). Venue is proper in this Court pursuant to CPLR § 503(a) because a substantial part of the events giving rise to the claim occurred in New York County. Plaintiff designates New York County as the place of trial. The nature of this action and the relief sought is set forth in the Complaint below.

    **YOU ARE HEREBY NOTIFIED** that on your failure to appear or answer, a judgment will be entered against you by default in an amount to be determined plus interest at the rate prescribed by law and the costs of this action, and granting the relief requested in the Notice below.

Dated: March 12, 2024

Respectfully submitted,

*/s/ David Boies*

David Boies
(New York Bar No. 2296333)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
(New York Bar No. 6051460)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff Jane Doe 3*

To:

Darren Indyke and Richard Kahn,
in their capacities as co-executors of
the Estate of Jeffrey Edward Epstein
c/o Daniel Seth Ruzumna
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

JANE DOE 3,

               Plaintiff,

    v.

DARREN K. INDYKE and RICHARD D.
KAHN, in their capacities as co-executors of
the ESTATE OF JEFFREY EDWARD
EPSTEIN,

               Defendants.

Index No.:

**COMPLAINT**

Jury Trial Demanded

## COMPLAINT

Plaintiff Jane Doe 3,[1] by and through her undersigned counsel, brings this complaint against Defendants Darren K. Indyke and Richard D. Kahn in their capacities as co-executors of the Estate of Jeffrey Edward Epstein ("Epstein"), and avers upon personal knowledge as to her own acts and status and upon information and belief and to all other matters as follows:

## NATURE OF THE ACTION

1.     This suit arises out of Jeffrey Epstein's sexual assault and battery, sexual abuse, and sex trafficking of Jane Doe 3.

2.     Jane Doe 3 was abused and trafficked by Epstein as part of his organized ring of procuring young and underage girls for sex. One of Epstein's co-conspirators contacted Jane Doe 3 and arranged to have Jane Doe 3 meet Epstein under the false pretense that he knew wealthy and

---

[1] Plaintiff is using the pseudonym "Jane Doe 3" in this Complaint in place of her real name. Plaintiff intends to file a motion to proceed anonymously to protect her privacy because her allegations concern sexual abuse, and the disclosure of her name in conjunction with the allegations would cause her further harm.

1

powerful individuals and would help her succeed in business. Rather than help her with her business career, Epstein manipulated and intimidated Jane Doe 3 and subjected her to months of sexual abuse in New York and elsewhere.

3. Epstein's sex-trafficking scheme involved recruiting young females by making false promises and using his wealth, power, and threats to intimidate the females into submission to his demands. This same pattern was repeated numerous times with numerous young women.

4. As United States District Judge Kenneth Marra found, "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas. . . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others." *Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).

5. Epstein organized this sex-trafficking network to obtain hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.

6. Epstein conspired with others and hired staff to maintain and keep secret this network of sexual abuse for years, which sprawled throughout Epstein's residences in New York, Florida, New Mexico, the United States Virgin Islands, and Paris. Epstein's preference was to have three different young females a day for his sexual pleasure.

7. Despite his significant criminal activity, in 2008 Epstein received a shockingly minimal charge pleading guilty to a single Florida state law charge of procuring a minor for prostitution and a non-prosecution agreement ("NPA") with the U.S. Attorney for the Southern

District of Florida.  Unknown to the public and the victims at the time, Epstein's lawyers were pressuring the government to commit to the NPA without informing the victims.  Epstein's multiple victims were kept in the dark and told to be "patient" while Epstein's lawyers worked to protect him and other potential co-conspirators from prosecution.  Epstein served one year in jail, but was afforded the privilege of being able to leave the jail to go to work for twelve hours per day, six days per week.

8.      The NPA allowed Epstein to escape proportionate punishment for his actions and to continue operating his sex-trafficking enterprise with liberty.

9.      A few years later, Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the *New York Post*: "Billionaire pervert Jeffrey Epstein is back in New York City – and making wisecracks about his just-ended jail stint for having sex with an underage girl.  'I am not a sexual predator, I'm an offender,' the financier told The Post yesterday.  'It's the difference between a murderer and a person who steals a bagel,' said Epstein."  Amber Sutherland, *Billionaire Jeffrey Epstein:  I'm a Sex Offender Not a Predator*, N.Y. Post (Feb. 25, 2011), https://nypost.com/2011/02/25/billionaire-jeffrey-epstein-im-a-sex-offender-not-a-predator/.

10.      In August 2018, just one year before his death, Epstein told a *New York Times* reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable."  James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People*, N.Y. Times (Aug. 12, 2019), https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

11.      When Jane Doe 3 was a young woman, Epstein added her to his long list of victims by committing sexual assault and battery against her.  As such, Epstein is responsible for battery

and intentional infliction of emotional distress pursuant to New York common law.  The damage to Jane Doe 3 has been severe and lasting.

## PARTIES

12.    Plaintiff Jane Doe 3 is a citizen of the European Union, but at relevant times was abused in the State of New York.

13.    Jane Doe 3 is using a pseudonym to protect her identity because of the sensitive and highly personal nature of this matter, which involves sexual assault.

14.    Jane Doe 3 is also at serious risk of retaliatory harm because the co-conspirators who participated in the Epstein sex-trafficking enterprise had—and continue to possess— tremendous wealth and power and have demonstrated a clear ability to cause her serious harm.

15.    Jane Doe 3's safety, right to privacy, and security outweigh the public interest in her identification.

16.    Jane Doe 3's legitimate concerns outweigh any prejudice to Defendants by allowing her to proceed anonymously.

17.    Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

18.    Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## JURISDICTION, VENUE, AND TIMELINESS

19.    Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death.  Epstein maintained a residence in New York County.  As the legal

4

Case 1:24-cv-02192-AS   Document 1-1   Filed 03/22/24   Page 8 of 61

representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands.

20.     Jurisdiction is proper pursuant to C.P.L.R. § 302(a) because Epstein owned, used, and/or possessed property within New York, because Epstein also regularly did and solicited business in New York, and because Epstein sexually assaulted Jane Doe 3 in, among other places, New York.

21.     Venue is proper in this Court pursuant to C.P.L.R. § 503(a) because a substantial part of the events giving rise to the claim occurred in New York County, including Epstein's sexual abuse of Jane Doe 3, which began and occurred in New York, New York, where he recruited her, physically molested her, and began grooming her for sex in his organized sex trafficking ring.

22.     This action has been timely filed pursuant to 18 U.S.C. § 1595(c)(1), which provides that a plaintiff shall have ten years after the cause of action arose to file suit against any person who perpetrates or knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known violated the laws against sex trafficking.

23.     This action is also timely under New York City's Victims of Gender-Motivated Violence Protection Law ("GMVPL"), as amended on January 9, 2022.  The 2022 Amendment provides that:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

N.Y.C. Admin. Code § 10-1105 (2022).

5

24.     Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3. Epstein's actions deprived Jane Doe 3 of the opportunity to commence this lawsuit before his death.

25.     Defendants are equitably estopped from asserting a statute of limitations defense. Allowing Defendants to do so would be unjust.  Epstein and his co-conspirators intimidated each of his victims, including Jane Doe 3, into silence by threatening their lives and their livelihoods. They therefore prevented Jane Doe 3 from commencing this lawsuit before his death.  By using threats, along with his wealth and power, Epstein was able to escape punishment for his intolerable and brutal crimes against countless young women and underage girls.

## FACTUAL ALLEGATIONS

### A.     Epstein's Sex Trafficking Enterprise

26.     Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

27.     Epstein's sex-trafficking enterprise operated in many respects as a sex-themed cult designed to ensnare vulnerable young women and indoctrinate them into Epstein's carefully constructed world in which Epstein was their messiah and sex abuser.

28.     Once in Epstein's clutches, each victim was taught and understood that she must be completely compliant with every wish or demand Epstein had for her; otherwise, she would certainly suffer serious reputational, financial, and psychological harm.  By using these and other

means of force, threats of force, fraud, threats of abuse of the legal process and coercion, Epstein sexually trafficked and sexually abused Jane Doe 3.

29.     Epstein owned multiple residences and frequently travelled between them, including at 9 East 71st Street, New York, New York, 10021, where illegal sexual crimes against Jane Doe 3 occurred.  Epstein conservatively valued his New York townhome at $55,931,000.00. Epstein conservatively valued his ranch at 49 Zorro Ranch Road, Stanley, New Mexico, 87056, at $17,246,208.00.  In addition, Epstein owned residences in the United States Virgin Islands, Florida, France, and even on his own island, Great St. James Island, where his transcontinental sex trafficking of hundreds of young girls servicing him, his co-conspirators, and wealthy and powerful individuals around the world occurred.  At Epstein's bail hearing on July 24, 2019, based on claims that Epstein made to his financial institutions at the time, the government stated that Epstein's net worth was $500 million.

30.     Epstein also maintained numerous apartment units at 301 East 66th Street in New York City, where Epstein's co-conspirators often stayed and which operated as stash houses where numerous victims were kept over the years.

31.     The allegations herein concern Epstein's tortious acts against Jane Doe 3 while in New York, as well as in Florida, New Mexico, the United States Virgin Islands, and Paris.

32.     At all times material to this cause of action, Epstein utilized his seemingly unlimited power, wealth, and resources, as well as his deep connections to powerful and politically connected individuals to intimidate and manipulate his victims of sexual abuse.

33.     Epstein and his co-conspirators had perfected a scheme for manipulation and abuse of young females.  As part of the scheme, a female "recruiter" would approach a young female and strike up a conversation in an effort to quickly learn about the young female's background and

any vulnerabilities they could expose.  The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young female something she needed. At times the recruiter's lure would be a modeling opportunity, money for education, career opportunities, help for the young female's family, and a whole host of other related offers depending on their target's situation.  Once in the residence, the recruiter and Epstein would work in concert to impress and intimidate the young female with displays of vast wealth, including having employees that were butlers and maids formally dressed around the house.  They would also strategically place photographs of very powerful political and social figures amongst photographs and art displaying nude females in an effort to normalize the sexual abuse.  They would also normalize the sexual abuse by placing a massage table and spa related products around the massage area in an effort to legitimize the area where the abuse was set to occur.  Once abused, Epstein and his co-conspirators continued to manipulate the victims, using their financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.

34.    Epstein's victims were young women and girls, who suffered severe abuse as Epstein's sex-trafficking victims and who believed they had to remain loyal to the venture at all costs in order to survive.  At all times relevant to this action, Epstein victimized hundreds of young women and girls.

**B.    The Arrest, Prosecution, and Death of Epstein**

35.    The sex-trafficking ring described herein started at least as early as 1995 and continued up until at least July 2, 2019, when the U.S. Attorney's Office for the Southern District of New York indicted Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591.  The indictment described Epstein's conduct and his abuse and trafficking of females in the same trafficking operation he used to abuse and traffic Jane Doe 3.

36.     On July 8, 2019, Epstein was arrested pursuant to the New York indictment.

37.     Epstein's last will and testament ("Will") was executed on August 8, 2019, at the Metropolitan Correctional Center.  The witnesses were Mariel Colón Miró and Gulnora Tali.  The Will included affidavits from Darren K. Indyke and Richard D. Kahn, in which they swear an "Oath of Willingness to Serve as Executor and Appointment of Local Counsel."

38.     Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

39.     The Will was filed on August 15, 2019, in the Probate Division of the Superior Court of the Virgin Islands.

40.     Darren K. Indyke and Richard D. Kahn filed a Certificate of Trust in the Superior Court of the Virgin Islands for Epstein's 1953 Trust on August 26, 2019.  *See* Certificate of Trust, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

41.     The Will was entered into probate on September 6, 2019, and the Superior Court of the Virgin Islands accordingly authorized Darren K. Indyke and Richard D. Kahn to administer Epstein's estate.  *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019).

42.     The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate."  The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated … to the then acting Trustees of The 1953 Trust."

9

C.    **Jane Doe 3**

43.    Under the ruse that he was interested in helping her, Epstein paid for Jane Doe 3 to fly from Europe to New York, where he instructed her to stay in one of his 301 East 66th Street apartments.  Epstein provided Jane Doe 3 with a cell phone that he used to contact her.

44.    While in New York, Jane Doe 3 was constantly badgered by Epstein and his employees to "loosen up" and "relax" when she declined to talk explicitly about sex.

45.    On one occasion while in Epstein's New York home, Jane Doe 3 was riding in an elevator with Epstein and another woman.  When they got out of the elevator and entered Epstein's massage room, Epstein had the other girl perform oral sex on him while forcing Jane Doe 3 to watch in close proximity.  Epstein kept trying to get Jane Doe 3 to join in on the oral sex and kiss the other girl.  When Jane Doe 3 refused, Epstein started to forcibly touch Jane Doe 3 without her consent on her breasts and below the waist.

46.    On another occasion, Epstein and Jane Doe 3 were in one of the rooms in Epstein's New York home.  Suddenly, Epstein pushed Jane Doe 3 down and forced her to perform oral sex on him.  Epstein also touched her below the waist and digitally penetrated her without her consent.

47.    On another occasion, Epstein and Jane Doe 3 were riding in Epstein's car in New York.  Suddenly, Epstein touched Jane Doe 3 below the waist and digitally penetrated her without her consent.

48.    While in New York, Jane Doe 3 was directed to go to Epstein's office in New York to receive cash from Epstein's employees on more than one occasion.

49.    Epstein would frequently become angry with Jane Doe 3 when she would refuse his sexual advances.

50.    In 2014, Epstein lured Jane Doe 3 to travel with him to several locations where either he or Ghislaine Maxwell had homes.

10

51.     On one occasion, Jane Doe 3 agreed to watch a movie with Epstein and another woman.  Epstein began touching the other woman's breasts and then started touching Jane Doe 3's breasts without her consent.

52.     Epstein also lured Jane Doe 3 to a secluded location and instructed Jane Doe 3 to allow Epstein to "teach" and "guide" her in sex.  When Jane Doe 3 declined, Epstein held her down and pressed a sex toy on her genitals while she cried, refusing to stop until he was satisfied she had orgasmed.

53.     On another trip, Epstein snuck into Jane Doe 3's room at night while she was sleeping and forced his fingers inside her genitals.

54.     Later, Epstein again lured Jane Doe 3 to meet him abroad.  During that trip, Epstein again snuck into Jane Doe 3's room at night while she was sleeping and raped her, forcing her to perform oral and vaginal sex.

55.     After this final abuse, Epstein continued to contact Jane Doe 3 via cell phone.  Eventually, Jane Doe 3 cut off contact with him and his co-conspirators.

56.     Epstein and his co-conspirators had a long history of grooming, indoctrinating, controlling, and ultimately committing sexual offenses against young, vulnerable women like Jane Doe 3.  Epstein and his co-conspirators constantly reminded Jane Doe 3 how powerful and important Epstein was.  Jane Doe 3 was chastised if she refused Epstein's sexual demands and told she should be grateful that Epstein was willing to help her.  She came to believe what she was told.

57.     The well-oiled Epstein sex abuse and trafficking venture included frequent statements to Jane Doe 3 and other victims by Epstein and his co-conspirators that: (1) Epstein possessed extraordinary wealth, power and influence; (2) Epstein's business and political friends, including world leaders, also included some of the most powerful people in the world; (3) Epstein

had the ability to advance or destroy nearly anyone financially, reputationally, and otherwise; (4) life necessities would be denied victims if they, including Jane Doe 3, failed to perform commercial sex acts for Epstein; and (5) Epstein could take away Jane Doe 3's and other victims' life necessities such as shelter or housing if she or they failed to perform those acts.

58.     Epstein's sex-trafficking venture targeted vulnerable young women and Jane Doe 3 was soon indoctrinated and unable to extricate herself.  Having been conditioned that the sexual abuse was "normal" and knowing that everyone surrounding Epstein were aware of the sex abuse, Jane Doe 3 was coerced into a cult-like life controlled and manipulated by Epstein and others doing Epstein's bidding.

59.     Epstein's sexual abuse against Jane Doe 3 was in direct violation of Article 130 of New York's Penal Law and the GMVPA.

60.     Epstein used means of force, threats of force, fraud, coercion, abuse of process, and a combination of such means to cause Jane Doe 3 to engage in commercial sex acts.

61.     Epstein recruited Jane Doe 3 to cause and force her to engage in commercial sex acts in ways that were in and affecting interstate and foreign commerce, including use of cell phones and means of interstate transportation (such as aircraft that he owned or controlled).

62.     Jane Doe 3 wanted to escape from the Epstein sex-trafficking enterprise, yet Epstein and his supporting team of co-conspirators used fraud, force, and coercion to cause her to remain compliant in fulfilling Epstein's sexual demands.

63.     Epstein controlled Jane Doe 3 financially, emotionally, and psychologically.  He used his knowledge of Jane Doe 3's aspirations, fears, and problems to manipulate her until she was completely controlled by and dependent upon him.

64.    Epstein and his co-conspirators withdrew large sums of cash to make payments to victims, including Jane Doe 3, in furtherance of the sex-trafficking operation.

65.    Jane Doe 3 was deeply affected by the sexual assaults and sex trafficking, and she suffers severe emotional distress from an experience that has affected her for her entire life.

## FIRST CAUSE OF ACTION

### (Participating in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591 (a)(1), 1595)

66.    Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

67.    Epstein knowingly and intentionally, through various means, participated in, perpetrated, assisted, supported, and facilitated a sex-trafficking venture that was in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1591(a)(1).

68.    At all times material hereto, Epstein, through means of force, threats of force, fraud, and/or coercion, caused Jane Doe 3 to engage in commercial sex acts.

69.    Specifically, Jane Doe 3 was forced to engage in commercial sex acts with Epstein in New York City and other locations.

70.    Epstein, at all times material hereto, was sexually abusing Jane Doe 3 through means of force, fraud, and/or coercion including but not limited to:

a.    Sexually assaulting Jane Doe 3 on numerous occasions and physically forcing her to engage in commercial sex acts;

b.    Falsely promising to help Jane Doe 3 with her career;

c.    Providing Jane Doe 3 with lodging at one of his 301 East 66th Street apartments to coerce her into engaging in commercial sex acts;

13

      d.      Providing Jane Doe 3 items of value such as an iPhone to further coerce her into engaging in commercial sex acts.

71.     As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Jane Doe 3 has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages. These injuries are permanent in nature and Jane Doe 3 will continue to suffer these losses in the future.

72.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Epstein is liable to Jane Doe 3 for the damages they sustained and reasonable attorneys' fees.

73.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(1), 1595, Epstein is liable to Jane Doe 3 for punitive damages.

## SECOND CAUSE OF ACTION

### (Knowing Beneficiary in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591(a)(2), 1595)

74.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

75.     Epstein knowingly and intentionally benefitted, financially and by receiving value, from participation in, perpetration of assistance of, support of, facilitation of a sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2).

76.     Epstein took many concrete steps to lead, participate, and aid his sex-trafficking venture. Among those steps, Epstein knowingly and intentionally recruited, enticed, provided,

obtained, advertised, and solicited by various means Jane Doe 3, knowing that he would use force, threats of force, fraud, coercion, and a combination of such means to cause Jane Doe 3 to engage in commercial sex acts.

77.     Among the concrete steps Epstein took to participate in and aid his sex-trafficking venture, Epstein engaged an enterprise of lawyers, accountants, and business services to assist him in creating sham companies to hide cash for the trafficking and with the withdrawal of large sums of cash to facilitate the trafficking.  Epstein would use cash and financial support as a means of defrauding, forcing, and coercing sex acts from Jane Doe 3.  His conduct was outrageous and intentional.

78.     Epstein's knowing and intentional actions were in and affecting the channels and instrumentalities of interstate and foreign commerce.

79.     By taking the concrete steps alleged in this complaint, Epstein knowingly participated in sex trafficking and furthered his sex-trafficking enterprise.  The concrete steps constituted taking part in the sex-trafficking venture and were necessary for its success.  The concrete steps constituted active engagement by Epstein in his sex-trafficking venture.  Epstein knew that his active engagement would lead to and cause coercive commercial sex-trafficking.

80.     Epstein knowingly and intentionally benefited financially from, and received value, for his participation in the sex-trafficking venture.  Through his sex-trafficking venture, Epstein abused hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.  Epstein's participation in his sex-trafficking venture allowed him to expand his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

15

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 19 of 61

81.     As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Jane Doe 3 has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages. These injuries are permanent in nature and Jane Doe 3 will continue to suffer these losses in the future.

82.     Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, have caused Jane Doe 3 harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

83.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Epstein is liable to Jane Doe 3 for the damages she sustained and reasonable attorneys' fees.

84.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(2), 1595, Epstein is liable to Jane Doe 3 for punitive damages.

### THIRD CAUSE OF ACTION

### (Violation of New York City Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1101, *et seq.*)

85.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

86.     The above-described conduct of Epstein constitutes a "crime of violence" and a "crime of violence motivated by gender" against Jane Doe 3 as defined by the New York City Victims of Gender-Motivated Violence Protection Law, as amended, N.Y.C. Admin. Code § 10-1101, *et seq.*

87.     The above-described conduct of Epstein constitutes a "crime of violence" against Jane Doe 3 motivated: (i) by gender; (ii) on the basis of gender; and/or (iii) due, at least in part, to an animus based on gender.

88.     Epstein committed a "crime of violence" against Jane Doe 3, because she is a woman and because Epstein willingly participated and engaged in violent sexual acts against Jane Doe 3 in New York, including but not limited to, forced oral sex, digital penetration, forcible touching, and sex trafficking in New York City.  Epstein's conduct shows his gender-motivated animus towards women, as he knowingly, individually, and personally engaged in sexual violence against women and facilitated a decades-long international sex-trafficking operation.

89.     As a direct and proximate result of the aforementioned gender-motivated violence, Jane Doe 3 has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory damages.

90.     By virtue of these intentional and outrageous violations of GMVPL, Epstein is liable to Jane Doe 3 for punitive damages and an award of attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Battery)

91.     Plaintiff Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

92.     Epstein intentionally committed battery by sexually assaulting Plaintiff when she was a young woman.  As described above, on multiple occasions, Epstein intentionally sexually assaulted and touched Plaintiff in an offensive and sexual manner without her consent.

93.     Epstein's actions constitute sexual offenses as defined in New York Penal Law Article 130 inasmuch as Epstein and Maxwell sexually assaulted Plaintiff by forcible compulsion. *See* N.Y. C.P.L.R. § 213-C.

94.     As a direct and proximate result of Epstein's conduct, Jane Doe 3 has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

95.     Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3.

96.     Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

97.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

98.     As a direct result of these allegations as stated, Epstein committed intentional infliction of emotional distress against Jane Doe 3.

99.     Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

100.    Epstein's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Epstein's plan to recruit, entice, and assault Plaintiff on multiple occasions goes beyond all possible bounds of decency and is intolerable in a civilized community.

101.    Epstein knew or disregarded the substantial likelihood that these actions would cause Jane Doe 3 severe emotional distress.

18

102.     As a direct and proximate result of Epstein's conduct, Jane Doe 3 has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

103.     Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3.

104.     Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, awarding her compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.

Dated: March 12, 2024

Respectfully submitted,

*/s/ David Boies*

David Boies
(New York Bar No. 2296333)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
(New York Bar No. 6051460)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff Jane Doe 3*

20

At an IAS Part, Room _____, of the
Supreme Court of the State of New York,
County of New York, held at the Courthouse
located at 60 Centre Street, New York, New
York on the ____ of _____, 2024

Present: Hon. _____
           Justice of the Supreme Court

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

JANE DOE 3,

                          Plaintiff,

          v.                                          Index No.:

DARREN K. INDYKE and RICHARD D.                       **ORDER TO SHOW CAUSE**
KAHN, in their capacities as co-executors of
the ESTATE OF JEFFREY EDWARD
EPSTEIN,

                          Defendants.

Upon reading the Summons and Complaint in this action, dated March 12, 2024, and the

Affirmation of Sigrid McCawley, dated March 12, 2024,

LET the Defendants, or Counsel, SHOW CAUSE at an IAS Part ___, Room ____ of this

Court, to be held at the Courthouse located at 60 Centre Street, New York, NY on the ___ day of

_____, 20__ at _____ am/pm, or as soon thereafter as counsel can be heard,

why an Order should not be made,

     a) Granting Plaintiff leave to proceed anonymously under the name designated in the

        below caption;

1

b) Ordering the County Clerk to enter the caption of the above-entitled proceeding in the current minute books and indices of actions and proceedings maintained in his office under the title of "*JANE DOE 3 vs. DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN*";

c) Directing the parties, their attorneys, and agents to refrain from publishing Plaintiff's true identity; and

d) Granting such other relief as the Court may deem just and proper.

It is hereby **ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be and is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI"), bearing the following caption:

JANE DOE 3,

                    Plaintiff,

        v.

DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,

                    Defendants.

MAR 12 2024

HON. JENNIFER G. SCHECTER JSC

2

And it is further **ORDERED** that personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint served upon Defendants on or before ____ day of _____, 20__, be deemed as sufficient service.

**ENTER:**

_____

Justice of the Supreme Court

3

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 27 of 61

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

JANE DOE 3,

                    Plaintiff,

     v.

DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,

                    Defendants.

Index No.:

**AFFIRMATION**

### AFFIRMATION OF SIGRID MCCAWLEY IN SUPPORT OF
### PLAINTIFF'S ORDER TO SHOW CAUSE TO PROCEED ANONYMOUSLY

I, SIGRID MCCAWLEY, an attorney admitted to practice before the courts of the State of New York and not a party to this action, hereby affirm the following to be true under the penalties of perjury pursuant to CPLR § 2106(a):

1.     I am an attorney for the law firm Boies Schiller Flexner LLP, counsel of record for Plaintiff in the above-captioned case, and as such am fully familiar with the facts and circumstances surrounding this action.

2.     I make this affirmation in support of Plaintiff's Order to Show Cause to Proceed Anonymously pursuant to Civil Rights Law § 50-b and other supporting authority and caselaw.

3.     Plaintiff respectfully requests that she be permitted to proceed anonymously using the pseudonym "Jane Doe 3" in all publicly filed documents. Plaintiff further requests that Defendants and their agents be enjoined from disclosing Plaintiff's name and/or identity to anyone other than their attorneys.

1

4.     New York has recognized the highly personal and sensitive nature of cases alleging sexual assault by enacting Civil Rights Law § 50-b, which mandates confidentiality of all records that tend to identify a victim, and which protects the disclosure of the identity of a victim of sexual crimes. *See also, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (vacating order denying "plaintiff's application to prosecute her claims under a pseudonym").

5.     Plaintiff is the victim of multiple sexual crimes committed by Jeffrey Epstein and as such is entitled to § 50-b's guarantee of anonymity in court records. The facts of Plaintiff's case against Defendants Darren Indyke and Richard Kahn (in their capacities as co-executors of Epstein's Estate) are set forth in the Complaint which is attached along with the Summons hereto as **Exhibit A**. Specifically, Plaintiff alleges that Epstein sexually trafficked, abused, and exploited her for months in a humiliating and degrading manner. *See* Compl. ¶¶ 1–2, 43–65. She brings claims under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591(a)(1), (a)(2), 1595, Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1101, *et seq.*, and New York common law for battery and intentional infliction of emotional distress.

6.     Epstein's sex-trafficking enterprise has become highly publicized. The egregiousness of his crimes, his escape from proportionate punishment—Epstein entered into a Non-Prosecution Agreement with the U.S. Attorney for the Southern District of Florida in 2008 and died in prison after the U.S. Attorney for the Southern District of New York indicted him for federal sex-trafficking crimes in July 2019—and the recently unsealed documents in *Giuffre v. Maxwell*, 1:15-cv-07433-LAP (S.D.N.Y.), has made his case one of public fascination. The names of the victims who have come forward against Epstein thus far have been widely publicized and discussed by the media.

7.      Releasing Plaintiff's name to the public will expose some of her darkest moments and tie those moments to her name in perpetuity.  Using her real name in this litigation, therefore, would cause her significant harm and distress, and would inhibit her ability to heal.  For these and similar reasons, other courts have allowed Epstein's victims to proceed anonymously in numerous cases.  *See, e.g.*, *Bensky et al v. Indyke et al*, No. 24 Civ. 01204 (S.D.N.Y. Feb. 12, 2024), Dkt. 12 (granting this Plaintiff's request to proceed anonymously in case based on allegations of sexual abuse and trafficking by Epstein); *Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*, No. 22 Civ. 10018 (S.D.N.Y. Dec. 5, 2022), Dkt. 28; *Doe 1 v. JP Morgan Chase & Co.*, No. 22 Civ. 10019 (S.D.N.Y Dec. 8, 2022), Dkt. 22; *Doe 1000 v. Indyke at al.*, No. 19 Civ. 10577 (S.D.N.Y. Jan. 24, 2020), Dkt. 23; *Doe 17 v. Indyke et al.*, No. 19 Civ. 9610 (S.D.N.Y. Nov. 8, 2019), Dkt. 25; *Katlyn Doe v. Darren K. Indyke, et al.*, No. 19 Civ. 7771 (S.D.N.Y. Sept. 12, 2019), Dkt. 28; *Jane Doe 43 v. Epstein et al.*, No. 17 Civ. 616 (S.D.N.Y. Apr. 5, 2017), Dkt. 28; *Jane Doe No. 103 v. Epstein*, No. 10 Civ. 80309 (S.D. Fla. Mar. 9, 2010), Dkt. 5; *Doe v.  Epstein*, No. 08 Civ. 80119 (S.D. Fla. Aug. 7, 2009), Dkt. 253; *Doe v. Epstein*, No. 08 Civ. 80893 (S.D. Fla. Oct. 6, 2008), Dkt. 15 at 2–3.  In *Bensky et al v. Indyke et al*, Plaintiff filed a motion for leave to proceed anonymously based on similar reasons as those herein, which the court granted.  No. 24 Civ. 01204 at Dkt. 12.

8.      Exposing Plaintiff's identity would cause her precisely the injuries for which she is seeking redress in this case:  extreme emotional distress, psychological trauma, pain and suffering. *See* Compl. ¶¶ 71, 81, 89, 94, 102.  Further, unlike most sexual assault cases, Epstein's crimes and victims have been the subject of an extraordinary amount of media attention, and many of his victims have been heavily scrutinized by the public. There is no reason to believe that Plaintiff would be subject to any less scrutiny than the women who have already spoken out against Epstein if she were to proceed under her real name.  Such scrutiny would have both personal and

professional consequences for Plaintiff. Her relationships would suffer. And as for her career, Plaintiff has significant concern that the public scrutiny could cause her professional harm.

9. The identification of Plaintiff in this matter would also create a serious risk of retaliation. Epstein's vast wealth and far-reaching connections make it clear that retaliation could be employed against individuals pursuing claims against individuals affiliated with him. In addition to exposing Plaintiff to physical or psychological harm, retaliation could also silence potential witnesses from coming forward.

10. Further, allowing Plaintiff to proceed anonymously will not prejudice the public's interest in open judicial proceedings. Plaintiff has not requested that all court filings be sealed, nor that any measure be effected that would conceal from the public all of the facts underlying this lawsuit, other than their identity. *See, e.g., Stevens v. Brown*, 2012 WL 2951181 ("[A]llowing plaintiff to proceed under a pseudonym does not significantly hamper the public's interest in open trials because the public will still have access to the court records for this case."); *Doe v. Szul Jewelry, Inc.*, 2008 WL 2157893, at *6 ("[C]ourts have recognized that a grant of anonymity impacts far less on the public's right to open proceedings than does the closing of a courtroom or the sealing of records"); *Doe v. Bellmore-Merrick Cent. High Sch. Dist.*, 1 Misc. 3d 697, 701, 770 N.Y.S.2d 847, 850 (Sup. Ct. 2003) ("The court granting a party the right to proceed anonymously is not the equivalent of sealing records and does not prevent the public from accessing court records").

11. Plaintiff's need for privacy outweighs any risk of prejudice or reputational harm. Epstein's crimes have been widely publicized, as has his *modus operandi* of recruiting and sexually abusing young, vulnerable women by offering to pay them for massages turned into unwelcome sexual encounters. With respect to difficulties in conducting discovery to investigate Plaintiff's

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 31 of 61

claims, Plaintiff would be willing to cooperate with Defendants to ensure that they could effectively conduct discovery and defend against Plaintiff's claims.  There would therefore be little to no prejudice to Defendants if Plaintiff were to remain anonymous.

12.     Plaintiff has also remained anonymous since Epstein abused her.  She is not a public figure, and she had never spoken out against Epstein or his co-conspirators before filing her federal case less than a month ago (where the court has granted her leave to proceed anonymously).  Nor are the details in the Complaint unique enough to make her identity discernible to the public or Epstein's cohorts; unfortunately, countless victims have stories that are extremely similar to hers.  This is therefore not a case in which a plaintiff attempts to gain an advantage by making accusations to the media, but then shields her name in court.  *Compare Doe v. Black*, 2023 WL 5334642, at *2 (S.D.N.Y. Aug. 18, 2023) (granting motion for leave to proceed anonymously when "Plaintiff has not spoken publicly about the incidents that underly the cause of action in the Complaint"), *and Doe v. Bedford Cent. Sch. Dist.*, No. 18 CV 11797 (VB), 2019 WL 493819, at *1 (S.D.N.Y. Feb. 8, 2019) (granting motion for leave to proceed anonymously when "the Court is persuaded plaintiffs have not discussed their claims publicly or in the media"), *with Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying motion for leave to proceed anonymously where the plaintiff was accusing a high profile person of sexual assault and "the press [had] known [the plaintiff's] name for some time").

13.     Further, the public has little to no interest in the disclosure of Plaintiff's name and identity.  Epstein had many victims, and the total number is still unknown.  Although the public has an interest in Epstein's life and crimes generally, the identity of Plaintiff is of no particular importance to the public.  Again she is a private figure who has never publicly identified herself

5

as an Epstein victim. The public's interest in this case is therefore not in Plaintiff's identity, but rather in the crimes Epstein committed against Plaintiff and countless other victims.

14.     In fact, the public interest would be better served by protecting Plaintiff's identity. "[T]he public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Kolko*, 242 F.R.D. at 195; *see also* N.Y. Civil Rights Law § 50-b (shielding sex-abuse victims from identification in, among other things, any "police report, court file, or other document"). Coming forward with allegations of sexual assault is already extremely difficult for many survivors. *See* Cameron Kimble, Sexual Assault Remains Dramatically Underreported, Brennan Center for Justice (Oct. 4, 2018), https://www.brennancenter.org/our-work/analysis-opinion/sexual-assaultremains-dramatically-underreported ("Sexual assault survivors struggle with a wide range of emotions that make coming forward difficult: fear of revictimization, distortion of allegations, and generally not being believed."). Keeping Plaintiff's name from the public will ensure that media scrutiny of her story will not deter other Epstein victims or other victims of sexual abuse and trafficking from sharing their own experiences.

15.     Finally, there are no alternative mechanisms for protecting Plaintiff's identity. anything less than full protection of Plaintiff's identity would exacerbate the harms that Plaintiff has already suffered due to the conduct described in the Complaint. There is no adequate alternative mechanism for protecting her confidentiality.

16.     Thus, given New York's accepted practice of permitting victims of sexual offenses to proceed anonymously, as well as the clear policy of the State of New York to protect victims' privacy, Plaintiff, by and through her attorneys, respectfully requests that she be allowed to proceed anonymously in this matter under the pseudonym "Jane Doe 3."

17.    Plaintiff has not made a prior request for the relief being sought herein.


Dated: Fort Lauderdale, Florida
      March 12, 2024

Respectfully submitted,

/s/

David Boies
(New York Bar No. 2296333)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
(New York Bar No. 6051460)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff Jane Doe 3*

# EXHIBIT A

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

|  |  |
|---|---|
| JANE DOE 3, | |
| Plaintiff, | Index No.: |
| v. | **SUMMONS** |
| DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN, | Plaintiff designates New York County as the place of trial |
| Defendants. | Venue is in this County pursuant to CPLR § 503(a) |

To the Above Named Defendants:

 **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorneys, at the address stated below, a notice of appearance and answer to the complaint, within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service if this Summons is not personally delivered to you within the State of New York. This Court has personal jurisdiction over this proceeding pursuant to CPLR § 302(a). Venue is proper in this Court pursuant to CPLR § 503(a) because a substantial part of the events giving rise to the claim occurred in New York County. Plaintiff designates New York County as the place of trial. The nature of this action and the relief sought is set forth in the Complaint below.

 **YOU ARE HEREBY NOTIFIED** that on your failure to appear or answer, a judgment will be entered against you by default in an amount to be determined plus interest at the rate prescribed by law and the costs of this action, and granting the relief requested in the Notice below.

Dated: March 12, 2024

Respectfully submitted,

*/s/ Sigrid McCawley*

David Boies
(New York Bar No. 2296333)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
(New York Bar No. 6051460)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff Jane Doe 3*

To:

Darren Indyke and Richard Kahn,
in their capacities as co-executors of
the Estate of Jeffrey Edward Epstein
c/o Daniel Seth Ruzumna
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 3, | |
| Plaintiff, | Index No.: |
| v. | **COMPLAINT** |
| DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN, | Jury Trial Demanded |
| Defendants. | |

## COMPLAINT

Plaintiff Jane Doe 3,[1] by and through her undersigned counsel, brings this complaint against Defendants Darren K. Indyke and Richard D. Kahn in their capacities as co-executors of the Estate of Jeffrey Edward Epstein ("Epstein"), and avers upon personal knowledge as to her own acts and status and upon information and belief and to all other matters as follows:

## NATURE OF THE ACTION

1.      This suit arises out of Jeffrey Epstein's sexual assault and battery, sexual abuse, and sex trafficking of Jane Doe 3.

2.      Jane Doe 3 was abused and trafficked by Epstein as part of his organized ring of procuring young and underage girls for sex.  One of Epstein's co-conspirators contacted Jane Doe 3 and arranged to have Jane Doe 3 meet Epstein under the false pretense that he knew wealthy and

---

[1] Plaintiff is using the pseudonym "Jane Doe 3" in this Complaint in place of her real name. Plaintiff intends to file a motion to proceed anonymously to protect her privacy because her allegations concern sexual abuse, and the disclosure of her name in conjunction with the allegations would cause her further harm.

Case 1:24-cv-02192-AS   Document 1-1   Filed 03/22/24   Page 38 of 61

powerful individuals and would help her succeed in business.  Rather than help her with her business career, Epstein manipulated and intimidated Jane Doe 3 and subjected her to months of sexual abuse in New York and elsewhere.

3.     Epstein's sex-trafficking scheme involved recruiting young females by making false promises and using his wealth, power, and threats to intimidate the females into submission to his demands.  This same pattern was repeated numerous times with numerous young women.

4.     As United States District Judge Kenneth Marra found, "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas. . . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually.  Epstein used paid employees to find and bring minor girls to him.  Epstein worked in concert with others to obtain minors not only for his own sexual gratification, but also for the sexual gratification of others." *Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).

5.     Epstein organized this sex-trafficking network to obtain hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.

6.     Epstein conspired with others and hired staff to maintain and keep secret this network of sexual abuse for years, which sprawled throughout Epstein's residences in New York, Florida, New Mexico, the United States Virgin Islands, and Paris.  Epstein's preference was to have three different young females a day for his sexual pleasure.

7.     Despite his significant criminal activity, in 2008 Epstein received a shockingly minimal charge pleading guilty to a single Florida state law charge of procuring a minor for prostitution and a non-prosecution agreement ("NPA") with the U.S. Attorney for the Southern

District of Florida.  Unknown to the public and the victims at the time, Epstein's lawyers were pressuring the government to commit to the NPA without informing the victims.  Epstein's multiple victims were kept in the dark and told to be "patient" while Epstein's lawyers worked to protect him and other potential co-conspirators from prosecution.  Epstein served one year in jail, but was afforded the privilege of being able to leave the jail to go to work for twelve hours per day, six days per week.

8.    The NPA allowed Epstein to escape proportionate punishment for his actions and to continue operating his sex-trafficking enterprise with liberty.

9.    A few years later, Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the *New York Post*: "Billionaire pervert Jeffrey Epstein is back in New York City – and making wisecracks about his just-ended jail stint for having sex with an underage girl.  'I am not a sexual predator, I'm an offender,' the financier told The Post yesterday.  'It's the difference between a murderer and a person who steals a bagel,' said Epstein."  Amber Sutherland, *Billionaire Jeffrey Epstein: I'm a Sex Offender Not a Predator*, N.Y. Post (Feb. 25, 2011), https://nypost.com/2011/02/25/billionaire-jeffrey-epstein-im-a-sex-offender-not-a-predator/.

10.    In August 2018, just one year before his death, Epstein told a *New York Times* reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable."  James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People*, N.Y. Times (Aug. 12, 2019), https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

11.    When Jane Doe 3 was a young woman, Epstein added her to his long list of victims by committing sexual assault and battery against her.  As such, Epstein is responsible for battery

and intentional infliction of emotional distress pursuant to New York common law. The damage to Jane Doe 3 has been severe and lasting.

## **PARTIES**

12.     Plaintiff Jane Doe 3 is a citizen of the European Union, but at relevant times was abused in the State of New York.

13.     Jane Doe 3 is using a pseudonym to protect her identity because of the sensitive and highly personal nature of this matter, which involves sexual assault.

14.     Jane Doe 3 is also at serious risk of retaliatory harm because the co-conspirators who participated in the Epstein sex-trafficking enterprise had—and continue to possess—tremendous wealth and power and have demonstrated a clear ability to cause her serious harm.

15.     Jane Doe 3's safety, right to privacy, and security outweigh the public interest in her identification.

16.     Jane Doe 3's legitimate concerns outweigh any prejudice to Defendants by allowing her to proceed anonymously.

17.     Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

18.     Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## **JURISDICTION, VENUE, AND TIMELINESS**

19.     Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death. Epstein maintained a residence in New York County. As the legal

representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands.

20. Jurisdiction is proper pursuant to C.P.L.R. § 302(a) because Epstein owned, used, and/or possessed property within New York, because Epstein also regularly did and solicited business in New York, and because Epstein sexually assaulted Jane Doe 3 in, among other places, New York.

21. Venue is proper in this Court pursuant to C.P.L.R. § 503(a) because a substantial part of the events giving rise to the claim occurred in New York County, including Epstein's sexual abuse of Jane Doe 3, which began and occurred in New York, New York, where he recruited her, physically molested her, and began grooming her for sex in his organized sex trafficking ring.

22. This action has been timely filed pursuant to 18 U.S.C. § 1595(c)(1), which provides that a plaintiff shall have ten years after the cause of action arose to file suit against any person who perpetrates or knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known violated the laws against sex trafficking.

23. This action is also timely under New York City's Victims of Gender-Motivated Violence Protection Law ("GMVPL"), as amended on January 9, 2022. The 2022 Amendment provides that:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

N.Y.C. Admin. Code § 10-1105 (2022).

24.    Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3. Epstein's actions deprived Jane Doe 3 of the opportunity to commence this lawsuit before his death.

25.    Defendants are equitably estopped from asserting a statute of limitations defense. Allowing Defendants to do so would be unjust. Epstein and his co-conspirators intimidated each of his victims, including Jane Doe 3, into silence by threatening their lives and their livelihoods. They therefore prevented Jane Doe 3 from commencing this lawsuit before his death. By using threats, along with his wealth and power, Epstein was able to escape punishment for his intolerable and brutal crimes against countless young women and underage girls.

## FACTUAL ALLEGATIONS

### A.    Epstein's Sex Trafficking Enterprise

26.    Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

27.    Epstein's sex-trafficking enterprise operated in many respects as a sex-themed cult designed to ensnare vulnerable young women and indoctrinate them into Epstein's carefully constructed world in which Epstein was their messiah and sex abuser.

28.    Once in Epstein's clutches, each victim was taught and understood that she must be completely compliant with every wish or demand Epstein had for her; otherwise, she would certainly suffer serious reputational, financial, and psychological harm. By using these and other

means of force, threats of force, fraud, threats of abuse of the legal process and coercion, Epstein sexually trafficked and sexually abused Jane Doe 3.

29.    Epstein owned multiple residences and frequently travelled between them, including at 9 East 71st Street, New York, New York, 10021, where illegal sexual crimes against Jane Doe 3 occurred.  Epstein conservatively valued his New York townhome at $55,931,000.00. Epstein conservatively valued his ranch at 49 Zorro Ranch Road, Stanley, New Mexico, 87056, at $17,246,208.00.   In addition, Epstein owned residences in the United States Virgin Islands, Florida, France, and even on his own island, Great St. James Island, where his transcontinental sex trafficking of hundreds of young girls servicing him, his co-conspirators, and wealthy and powerful individuals around the world occurred.  At Epstein's bail hearing on July 24, 2019, based on claims that Epstein made to his financial institutions at the time, the government stated that Epstein's net worth was $500 million.

30.    Epstein also maintained numerous apartment units at 301 East 66th Street in New York City, where Epstein's co-conspirators often stayed and which operated as stash houses where numerous victims were kept over the years.

31.    The allegations herein concern Epstein's tortious acts against Jane Doe 3 while in New York, as well as in Florida, New Mexico, the United States Virgin Islands, and Paris.

32.    At all times material to this cause of action, Epstein utilized his seemingly unlimited power, wealth, and resources, as well as his deep connections to powerful and politically connected individuals to intimidate and manipulate his victims of sexual abuse.

33.    Epstein and his co-conspirators had perfected a scheme for manipulation and abuse of young females.  As part of the scheme, a female "recruiter" would approach a young female and strike up a conversation in an effort to quickly learn about the young female's background and

any vulnerabilities they could expose. The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young female something she needed. At times the recruiter's lure would be a modeling opportunity, money for education, career opportunities, help for the young female's family, and a whole host of other related offers depending on their target's situation. Once in the residence, the recruiter and Epstein would work in concert to impress and intimidate the young female with displays of vast wealth, including having employees that were butlers and maids formally dressed around the house. They would also strategically place photographs of very powerful political and social figures amongst photographs and art displaying nude females in an effort to normalize the sexual abuse. They would also normalize the sexual abuse by placing a massage table and spa related products around the massage area in an effort to legitimize the area where the abuse was set to occur. Once abused, Epstein and his co-conspirators continued to manipulate the victims, using their financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.

34. Epstein's victims were young women and girls, who suffered severe abuse as Epstein's sex-trafficking victims and who believed they had to remain loyal to the venture at all costs in order to survive. At all times relevant to this action, Epstein victimized hundreds of young women and girls.

### B. The Arrest, Prosecution, and Death of Epstein

35. The sex-trafficking ring described herein started at least as early as 1995 and continued up until at least July 2, 2019, when the U.S. Attorney's Office for the Southern District of New York indicted Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591. The indictment described Epstein's conduct and his abuse and trafficking of females in the same trafficking operation he used to abuse and traffic Jane Doe 3.

36.    On July 8, 2019, Epstein was arrested pursuant to the New York indictment.

37.    Epstein's last will and testament ("Will") was executed on August 8, 2019, at the Metropolitan Correctional Center.  The witnesses were Mariel Colón Miró and Gulnora Tali.  The Will included affidavits from Darren K. Indyke and Richard D. Kahn, in which they swear an "Oath of Willingness to Serve as Executor and Appointment of Local Counsel."

38.    Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

39.    The Will was filed on August 15, 2019, in the Probate Division of the Superior Court of the Virgin Islands.

40.    Darren K. Indyke and Richard D. Kahn filed a Certificate of Trust in the Superior Court of the Virgin Islands for Epstein's 1953 Trust on August 26, 2019.  *See* Certificate of Trust, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

41.    The Will was entered into probate on September 6, 2019, and the Superior Court of the Virgin Islands accordingly authorized Darren K. Indyke and Richard D. Kahn to administer Epstein's estate.  *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019).

42.    The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate."  The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated … to the then acting Trustees of The 1953 Trust."

C.    **Jane Doe 3**

43.    Under the ruse that he was interested in helping her, Epstein paid for Jane Doe 3 to fly from Europe to New York, where he instructed her to stay in one of his 301 East 66th Street apartments.  Epstein provided Jane Doe 3 with a cell phone that he used to contact her.

44.    While in New York, Jane Doe 3 was constantly badgered by Epstein and his employees to "loosen up" and "relax" when she declined to talk explicitly about sex.

45.    On one occasion while in Epstein's New York home, Jane Doe 3 was riding in an elevator with Epstein and another woman.  When they got out of the elevator and entered Epstein's massage room, Epstein had the other girl perform oral sex on him while forcing Jane Doe 3 to watch in close proximity.  Epstein kept trying to get Jane Doe 3 to join in on the oral sex and kiss the other girl.  When Jane Doe 3 refused, Epstein started to forcibly touch Jane Doe 3 without her consent on her breasts and below the waist.

46.    On another occasion, Epstein and Jane Doe 3 were in one of the rooms in Epstein's New York home.  Suddenly, Epstein pushed Jane Doe 3 down and forced her to perform oral sex on him.  Epstein also touched her below the waist and digitally penetrated her without her consent.

47.    On another occasion, Epstein and Jane Doe 3 were riding in Epstein's car in New York.  Suddenly, Epstein touched Jane Doe 3 below the waist and digitally penetrated her without her consent.

48.    While in New York, Jane Doe 3 was directed to go to Epstein's office in New York to receive cash from Epstein's employees on more than one occasion.

49.    Epstein would frequently become angry with Jane Doe 3 when she would refuse his sexual advances.

50.    In 2014, Epstein lured Jane Doe 3 to travel with him to several locations where either he or Ghislaine Maxwell had homes.

10

51.     On one occasion, Jane Doe 3 agreed to watch a movie with Epstein and another woman.  Epstein began touching the other woman's breasts and then started touching Jane Doe 3's breasts without her consent.

52.     Epstein also lured Jane Doe 3 to a secluded location and instructed Jane Doe 3 to allow Epstein to "teach" and "guide" her in sex.  When Jane Doe 3 declined, Epstein held her down and pressed a sex toy on her genitals while she cried, refusing to stop until he was satisfied she had orgasmed.

53.     On another trip, Epstein snuck into Jane Doe 3's room at night while she was sleeping and forced his fingers inside her genitals.

54.     Later, Epstein again lured Jane Doe 3 to meet him abroad.  During that trip, Epstein again snuck into Jane Doe 3's room at night while she was sleeping and raped her, forcing her to perform oral and vaginal sex.

55.     After this final abuse, Epstein continued to contact Jane Doe 3 via cell phone.  Eventually, Jane Doe 3 cut off contact with him and his co-conspirators.

56.     Epstein and his co-conspirators had a long history of grooming, indoctrinating, controlling, and ultimately committing sexual offenses against young, vulnerable women like Jane Doe 3.  Epstein and his co-conspirators constantly reminded Jane Doe 3 how powerful and important Epstein was.  Jane Doe 3 was chastised if she refused Epstein's sexual demands and told she should be grateful that Epstein was willing to help her.  She came to believe what she was told.

57.     The well-oiled Epstein sex abuse and trafficking venture included frequent statements to Jane Doe 3 and other victims by Epstein and his co-conspirators that: (1) Epstein possessed extraordinary wealth, power and influence; (2) Epstein's business and political friends, including world leaders, also included some of the most powerful people in the world; (3) Epstein

had the ability to advance or destroy nearly anyone financially, reputationally, and otherwise; (4) life necessities would be denied victims if they, including Jane Doe 3, failed to perform commercial sex acts for Epstein; and (5) Epstein could take away Jane Doe 3's and other victims' life necessities such as shelter or housing if she or they failed to perform those acts.

58.     Epstein's sex-trafficking venture targeted vulnerable young women and Jane Doe 3 was soon indoctrinated and unable to extricate herself.  Having been conditioned that the sexual abuse was "normal" and knowing that everyone surrounding Epstein were aware of the sex abuse, Jane Doe 3 was coerced into a cult-like life controlled and manipulated by Epstein and others doing Epstein's bidding.

59.     Epstein's sexual abuse against Jane Doe 3 was in direct violation of Article 130 of New York's Penal Law and the GMVPA.

60.     Epstein used means of force, threats of force, fraud, coercion, abuse of process, and a combination of such means to cause Jane Doe 3 to engage in commercial sex acts.

61.     Epstein recruited Jane Doe 3 to cause and force her to engage in commercial sex acts in ways that were in and affecting interstate and foreign commerce, including use of cell phones and means of interstate transportation (such as aircraft that he owned or controlled).

62.     Jane Doe 3 wanted to escape from the Epstein sex-trafficking enterprise, yet Epstein and his supporting team of co-conspirators used fraud, force, and coercion to cause her to remain compliant in fulfilling Epstein's sexual demands.

63.     Epstein controlled Jane Doe 3 financially, emotionally, and psychologically.  He used his knowledge of Jane Doe 3's aspirations, fears, and problems to manipulate her until she was completely controlled by and dependent upon him.

64.     Epstein and his co-conspirators withdrew large sums of cash to make payments to victims, including Jane Doe 3, in furtherance of the sex-trafficking operation.

65.     Jane Doe 3 was deeply affected by the sexual assaults and sex trafficking, and she suffers severe emotional distress from an experience that has affected her for her entire life.

## FIRST CAUSE OF ACTION

### (Participating in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591 (a)(1), 1595)

66.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

67.     Epstein knowingly and intentionally, through various means, participated in, perpetrated, assisted, supported, and facilitated a sex-trafficking venture that was in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1591(a)(1).

68.     At all times material hereto, Epstein, through means of force, threats of force, fraud, and/or coercion, caused Jane Doe 3 to engage in commercial sex acts.

69.     Specifically, Jane Doe 3 was forced to engage in commercial sex acts with Epstein in New York City and other locations.

70.     Epstein, at all times material hereto, was sexually abusing Jane Doe 3 through means of force, fraud, and/or coercion including but not limited to:

a.     Sexually assaulting Jane Doe 3 on numerous occasions and physically forcing her to engage in commercial sex acts;

b.     Falsely promising to help Jane Doe 3 with her career;

c.     Providing Jane Doe 3 with lodging at one of his 301 East 66th Street apartments to coerce her into engaging in commercial sex acts;

    d.     Providing Jane Doe 3 items of value such as an iPhone to further coerce her into engaging in commercial sex acts.

71.     As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Jane Doe 3 has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages. These injuries are permanent in nature and Jane Doe 3 will continue to suffer these losses in the future.

72.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, Epstein is liable to Jane Doe 3 for the damages they sustained and reasonable attorneys' fees.

73.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(1), 1595, Epstein is liable to Jane Doe 3 for punitive damages.

## SECOND CAUSE OF ACTION

### (Knowing Beneficiary in a Sex-Trafficking Venture in Violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1591(a)(2), 1595)

74.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

75.     Epstein knowingly and intentionally benefitted, financially and by receiving value, from participation in, perpetration of assistance of, support of, facilitation of a sex-trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591(a)(2).

76.     Epstein took many concrete steps to lead, participate, and aid his sex-trafficking venture. Among those steps, Epstein knowingly and intentionally recruited, enticed, provided,

obtained, advertised, and solicited by various means Jane Doe 3, knowing that he would use force, threats of force, fraud, coercion, and a combination of such means to cause Jane Doe 3 to engage in commercial sex acts.

77.    Among the concrete steps Epstein took to participate in and aid his sex-trafficking venture, Epstein engaged an enterprise of lawyers, accountants, and business services to assist him in creating sham companies to hide cash for the trafficking and with the withdrawal of large sums of cash to facilitate the trafficking.  Epstein would use cash and financial support as a means of defrauding, forcing, and coercing sex acts from Jane Doe 3.  His conduct was outrageous and intentional.

78.    Epstein's knowing and intentional actions were in and affecting the channels and instrumentalities of interstate and foreign commerce.

79.    By taking the concrete steps alleged in this complaint, Epstein knowingly participated in sex trafficking and furthered his sex-trafficking enterprise.  The concrete steps constituted taking part in the sex-trafficking venture and were necessary for its success.  The concrete steps constituted active engagement by Epstein in his sex-trafficking venture.  Epstein knew that his active engagement would lead to and cause coercive commercial sex-trafficking.

80.    Epstein knowingly and intentionally benefited financially from, and received value, for his participation in the sex-trafficking venture.  Through his sex-trafficking venture, Epstein abused hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.  Epstein's participation in his sex-trafficking venture allowed him to expand his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

81.     As a direct and proximate result of Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Jane Doe 3 has in the past suffered, and in the future will continue to suffer, physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy, and a loss of her capacity to enjoy life, as well as other damages.  These injuries are permanent in nature and Jane Doe 3 will continue to suffer these losses in the future.

82.     Epstein's knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, have caused Jane Doe 3 harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

83.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2), 1595, Epstein is liable to Jane Doe 3 for the damages she sustained and reasonable attorneys' fees.

84.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(2), 1595, Epstein is liable to Jane Doe 3 for punitive damages.

## **THIRD CAUSE OF ACTION**

### **(Violation of New York City Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code § 10-1101, *et seq.*)**

85.     Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

86.     The above-described conduct of Epstein constitutes a "crime of violence" and a "crime of violence motivated by gender" against Jane Doe 3 as defined by the New York City Victims of Gender-Motivated Violence Protection Law, as amended, N.Y.C. Admin. Code § 10-1101, *et seq.*

87. The above-described conduct of Epstein constitutes a "crime of violence" against Jane Doe 3 motivated: (i) by gender; (ii) on the basis of gender; and/or (iii) due, at least in part, to an animus based on gender.

88. Epstein committed a "crime of violence" against Jane Doe 3, because she is a woman and because Epstein willingly participated and engaged in violent sexual acts against Jane Doe 3 in New York, including but not limited to, forced oral sex, digital penetration, forcible touching, and sex trafficking in New York City. Epstein's conduct shows his gender-motivated animus towards women, as he knowingly, individually, and personally engaged in sexual violence against women and facilitated a decades-long international sex-trafficking operation.

89. As a direct and proximate result of the aforementioned gender-motivated violence, Jane Doe 3 has sustained in the past and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory damages.

90. By virtue of these intentional and outrageous violations of GMVPL, Epstein is liable to Jane Doe 3 for punitive damages and an award of attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### (Battery)

91. Plaintiff Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

92. Epstein intentionally committed battery by sexually assaulting Plaintiff when she was a young woman. As described above, on multiple occasions, Epstein intentionally sexually assaulted and touched Plaintiff in an offensive and sexual manner without her consent.

93. Epstein's actions constitute sexual offenses as defined in New York Penal Law Article 130 inasmuch as Epstein and Maxwell sexually assaulted Plaintiff by forcible compulsion. *See* N.Y. C.P.L.R. § 213-C.

94. As a direct and proximate result of Epstein's conduct, Jane Doe 3 has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

95. Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3.

96. Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

97. Jane Doe 3 repeats and re-alleges the allegations stated above in paragraphs 1–65 as if fully set forth herein.

98. As a direct result of these allegations as stated, Epstein committed intentional infliction of emotional distress against Jane Doe 3.

99. Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

100. Epstein's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Epstein's plan to recruit, entice, and assault Plaintiff on multiple occasions goes beyond all possible bounds of decency and is intolerable in a civilized community.

101. Epstein knew or disregarded the substantial likelihood that these actions would cause Jane Doe 3 severe emotional distress.

102.    As a direct and proximate result of Epstein's conduct, Jane Doe 3 has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

103.    Any statute of limitations applicable to Jane Doe 3's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Jane Doe 3.

104.    Epstein is equitably estopped from asserting a statute of limitations defense. Allowing Epstein to do so would be unjust.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, awarding her compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 56 of 61

Dated: March 12, 2024

Respectfully submitted,

*/s/ Sigrid McCawley*

David Boies
(New York Bar No. 2296333)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
(New York Bar No. 6051460)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff Jane Doe 3*

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 11/24/2022)

**SUPREME** COURT, COUNTY OF **NEW YORK**

Index No: _____  Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |

**JANE DOE 3**

Plaintiff(s)/Petitioner(s)

Judge Assigned

-against-

**DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN**

Defendant(s)/Respondent(s)

RJI Filed Date

## NATURE OF ACTION OR PROCEEDING    Check only one box and specify where indicated.

**COMMERCIAL**
- ○ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ○ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (*specify*): _____
  - **NOTE:** *For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.*

**TORTS**
- ○ Adult Survivors Act
- ○ Asbestos
- ○ Environmental (*specify*): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (*specify*): _____
- ○ Other Negligence (*specify*): _____
- ○ Other Professional Malpractice (*specify*): _____
- ◉ Other Tort (*specify*): Trafficking Victims Prevention Act; Victims of Gender Motivated Violence Protection Law; battery; IIED

**SPECIAL PROCEEDINGS**
- ○ Child-Parent Security Act (*specify*): ○ Assisted Reproduction ○ Surrogacy Agreement
- ○ CPLR Article 75 – Arbitration    [see **NOTE** in **COMMERCIAL** section]
- ○ CPLR Article 78 – Proceeding against a Body or Officer
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 – Kendra's Law
- ○ MHL Article 10 – Sex Offender Confinement (*specify*): ○ Initial ○ Review
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (*specify*): _____
- ○ Other Special Proceeding (*specify*): _____

**MATRIMONIAL**
- ○ Contested
  - **NOTE:** *If there are children under the age of 18, complete and attach the* **MATRIMONIAL RJI ADDENDUM (UCS-840M).**
  - *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**    Specify how many properties the application includes: _____
- ○ Condemnation
- ○ Mortgage Foreclosure (*specify*): ○ Residential ○ Commercial
  - Property Address: _____
  - **NOTE:** *For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the* **FORECLOSURE RJI ADDENDUM (UCS-840F).**
- ○ Partition
  - **NOTE:** *Complete and attach the* **PARTITION RJI ADDENDUM (UCS-840P).**
- ○ Tax Certiorari (*specify*): Section: _____ Block: _____ Lot: _____
- ○ Tax Foreclosure
- ○ Other Real Property (*specify*): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution  [see **NOTE** in **COMMERCIAL** section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change/Sex Designation Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (*specify*): _____

## STATUS OF ACTION OR PROCEEDING    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ○ | ◉ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ○ | ◉ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION    Check one box only and enter additional information where indicated.

- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ○ Notice of Motion    Relief Requested: _____    Return Date: _____
- ○ Notice of Petition    Relief Requested: _____    Return Date: _____
- ◉ Order to Show Cause    Relief Requested: Leave to Proceed Anonymously    Return Date: _____
- ○ Other Ex Parte Application    Relief Requested: _____
- ○ Partition Settlement Conference
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ○ Other (specify): _____

**RELATED CASES** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A).**

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A).**

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: JANE DOE 3<br>Role(s): Plaintiff | Sigrid McCawley, Boies Schiller Flexner LLP, 401 E. Las Olas Blvd., Ste. 1200, Fort Lauderdale, FL 33301, (954) 356-0011, smccawley@bsfllp.com | ○ YES  ○ NO |  |
| ☐ | Name: DARREN INDYKE and RICHARD KAHN (in their capacities<br>Role(s): Defendant | Daniel Seth Ruzumna, Patterson, Belknap, Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036, (212) 336-2000, druzumna@pbwt.com | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |
| ☐ | Name:<br>Role(s): |  | ○ YES  ○ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: _____**03/12/2024**_____

_____
**/s/ Sigrid McCawley**
Signature

_____**6051460**_____
Attorney Registration Number

_____
**Sigrid McCawley**
Print Name

B

At ~~an~~ IAS Part, Room  <u>6̶2̶3̶</u> , of the
Supreme Court of the State of New York,
County of New York, held at the Courthouse
located at ~~60~~ Centre Street, New York, New
York on the <u>18ᵗʰ</u> of <u>March</u> , 2024

Present: Hon.  **HON. SUZANNE ADAMS**
                    ─────────────────────────
                    Justice of the Supreme Court

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

---

JANE DOE 3,

        Plaintiff,

   v.

DARREN K. INDYKE and RICHARD D.
KAHN, in their capacities as co-executors of
the ESTATE OF JEFFREY EDWARD
EPSTEIN,

        Defendants.

---

Index No.: 152161/2024

**ORDER TO SHOW CAUSE**

MS#1  Other - Maintain Pseudonym Caption

    Upon reading the Summons and Complaint in this action, dated March 12, 2024, and the

Affirmation of Sigrid McCawley, dated March 12, 2024,

    LET the Defendants, or Counsel, SHOW CAUSE at an IAS Part 39, Room 623 of this

Court, to be held at the Courthouse located at ~~60~~ Centre Street, New York, NY on the 25ᵗʰ day of

<u>March</u> , 2024 at 11:00 (am)/pm, or as soon thereafter as counsel can be heard,

why an Order should not be made,

    a)  Granting Plaintiff leave to proceed anonymously under the name designated in the

       below caption;

1

b) Ordering the County Clerk to enter the caption of the above-entitled proceeding in the current minute books and indices of actions and proceedings maintained in his office under the title of "*JANE DOE 3 vs. DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN*";

c) Directing the parties, their attorneys, and agents to refrain from publishing Plaintiff's true identity; and

d) Granting such other relief as the Court may deem just and proper.

It is hereby **ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be and is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI"), bearing the following caption:

MAR 12 2024

JANE DOE 3,

        Plaintiff,

   v.

DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as co-executors of the ESTATE OF JEFFREY EDWARD EPSTEIN,

        Defendants.

HON. JENNIFER G. SCHECTER
J.S.C.

2

Case 1:24-cv-02192-AS    Document 1-1    Filed 03/22/24    Page 61 of 61

And it is further **ORDERED** that personal service of a copy of this Order to Show Cause

together with the papers upon which it is based and the Summons and Complaint served upon

Defendants on or before 20th day of _March_____, 20 24, be deemed as sufficient service.


ENTER:

_____
Justice of the Supreme Court
**HON. SUZANNE ADAMS**
                    **J.S.C.**


Index No 152161/2024